1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  RODNEY ZAYAS, | )  Case No.: 1:13-cv-01863-DAD-JLT |
| 12      Petitioner, | )  FINDINGS AND RECOMMENDATIONS TO |
| 13  v. | )  DENY FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS (Doc. 26) |
| 14  KAMALA D. HARRIS, | )  ORDER DIRECTING THAT OBJECTIONS BE |
| 15      Respondent. | )  FILED WITHIN TWENTY-ONE DAYS |
| 16 | ) |

17         In 2011, Rodney Zayas was convicted of second degree murder and sentenced to forty years-

18  to-life. In this action, Mr. Zayas contends he is entitled to habeas relief for various grounds including

19  juror and prosecutorial misconduct, among other claims.  Because the Court does not find any basis

20  for relief, it recommends the petition be **DENIED**.

21  **I.         PROCEDURAL HISTORY**

22         After his conviction in the County of Tulare Superior Court, Petitioner appealed to the

23  California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction.

24  (People v. Zayas, 2012 WL 2358046 (Cal.App. June 21, 2012)).   Petitioner then filed a petition for

25  review in the California Supreme Court, which was denied.  (Lodged Document ("LD") 3; 4)

26         Petitioner filed his first state habeas corpus petition in the California Supreme Court; it was

27  denied. (LD 6, 7)  Petitioner filed another habeas petition in the California Supreme Court on July 28,

28  2014; it was denied on October 29, 2014.  (LD 16, 17)

1

On November 18, 2013, Petitioner filed the instant petition.  (Doc. 1)  On February 19, 2014, Respondent filed a motion to dismiss the petition because it contained unexhausted claims, i.e., grounds three and seven.  (Doc. 12)  On June 2, 2014, Petitioner filed a motion to withdraw the unexhausted claims.  (Doc. 16)  The Court granted Petitioner the opportunity to file a motion for stay of proceedings to exhaust the two unexhausted claims.  (Doc. 18)  Petitioner filed his motion for stay. (Doc. 19)  The Court granted the motion for stay, and, after Petitioner exhausted the unexhausted claims, permitted Petitioner to amend the original petition to include the newly exhausted claims. (Docs. 22; 24)  The first amended petition was filed on January 1, 2015.  (Doc. 26)  Respondent's answer was filed on April 7, 2015.  (Doc. 35)  On May 18, 2015, Petitioner filed his Traverse.  (Doc. 41)

Respondent does not appear to contend that any of the grounds for relief in the petition have not been fully exhausted.  (Doc. 35, p. 9)  However, Respondent does argue, as discussed *infra*, that grounds seven and eight of the first amended petition are procedurally defaulted as untimely.  (Id.)

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

About 7:45 p.m. on August 28, 2009, Tulare County Sheriff's Sergeant Douglas Winslow was dispatched to investigate a report of a shooting.  When he arrived at the scene, there were 25 to 30 people standing on the sidewalk, and the victim, Arturo Bello, was lying face down in the road about eight feet from the sidewalk. Winslow found no weapons at the scene.  Emergency personnel arrived and confirmed Bello was dead. Bello was dressed in the color blue.

Sheriff's Detective Michael Yandell responded to a felony traffic stop that same night.  The four occupants of the car, including Zayas, were removed from the car at gunpoint and detained and a gunshot residue test was conducted on Zayas's hands.  One witness at the "in-field show-up" positively identified all four occupants of the car as being involved in the shooting of Bello and identified Zayas as the shooter.

In a taped interview that night, Zayas waived his rights and agreed to be interviewed.  Zayas briefly discussed that his brother had been shot and killed by Surenos.  Zayas had Norteno gang tattoos and when asked about them he stated he gravitated toward the people with whom his brother had associated. At the time of Bello's shooting, Zayas claimed he was "very intoxicated" and did not "remember too much."  Zayas eventually acknowledged that he pulled out a gun because he "fel[t] threatened."  He did not recall how many times he fired his gun and claimed he did not see the person he shot.

On August 29, 2009, a search pursuant to a search warrant was conducted at a residence.  The

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

search uncovered indicia that Zayas lived in a bedroom at that residence.  In the bedroom was a shotgun loaded with five live rounds, letters addressed to Zayas from incarcerated inmates, and red clothing.

Zayas, Joshua Lee Hernandez, Richard Miguel Garcia, and Santos Hernandez were charged with conspiracy to commit murder, the murder of Bello, and the attempted murder of G.C.  It was alleged as to all three counts that they were committed for the benefit of a criminal street gang.  A special circumstance appended to the murder count alleged that the murder was committed by active participants in a criminal street gang and that it furthered the activities of the gang.

Prior to trial the trial court granted the prosecutor's motion to sever the trials of the four defendants and the motion to dismiss the conspiracy count.  Also, Zayas moved to bifurcate the trial on the gang allegations from the substantive offense, which the trial court denied.  Zayas then moved to limit the admissibility of gang evidence.  The trial court heard argument and made a tentative ruling.

At trial the analysis of the gunshot residue test of Zayas's hands established that he had gunshot residue on both his right and left hands.  Expert testimony established that Bello was identifying himself as a Sureno.  Expert testimony also established that the Nortenos and Surenos were enemies, that Zayas and his companions, on the evening of the shooting, were Norteno gang members, and that the charged crimes were committed for the benefit of the Norteno gang.

Zayas testified on his own behalf.  He testified regarding his brother's death, his decision to carry a gun, interviews he gave to the police, and questionnaires he filled out at the time of booking.  Zayas claimed he was a certified medical assistant and was on a waiting list at Fresno City College for the nursing program.

Zayas said he and his companions had been drinking and "smoking pot" on the day Bello was shot.  While driving through a neighborhood, Zayas said some people wearing the color blue threw something at the car they were in, so they stopped and got out of their car.  One of the persons wearing blue approached them.  Zayas thought he saw something "shine" or "glare" from the person's waistband, so he pulled out his gun and shot at the person.

The jury found Zayas not guilty of first degree murder as charged but guilty of second degree murder.  The jury found true that a principal personally discharged a firearm and that the crime was committed for the benefit of a criminal street gang.  The jury found him not guilty of attempted murder.  On May 20, 2011, Zayas was sentenced to a term of 40 years to life.

(Zayas, 2012 WL 2358046, at *1-2).

## DISCUSSION

### I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is

located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

## II.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of  the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

4

1    possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

2          The second prong pertains to state court decisions based on factual findings. Davis v.

3    Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a

4    federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted

5    in a decision that was based on an unreasonable determination of the facts in light of the evidence

6    presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114

7    F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly incorrect that it

8    would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001

9    (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

10         To determine whether habeas relief is available under § 2254(d), the federal court looks to the

11   last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker,

12   501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we

13   independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v.

14   Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

15         The prejudicial impact of any constitutional error is assessed by asking whether the error had "a

16   substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson,

17   507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht

18   standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

19   **III.  Review of Petitioner's Claims**

20         In his petition, Mr. Zayas claims the following as grounds for relief: (1) juror misconduct as to

21   juror no. 6; (2) ineffective assistance of trial counsel for not adequately questioning and dismissing

22   juror no. 6; (3) due process error in denial of the bifurcation motion; (4) due process violation for

23   failure to excuse juror who expressed fear; (5) error in admission of evidence; (6) prosecutorial

24   misconduct in closing argument; (7) ineffective assistance of counsel in admitting Petitioner's school

25   records; (8) prosecutorial misconduct in implying during Petitioner's cross-examination that she had

26   more evidence than she did of his brother's murder; and, (9) cumulative error.  (Doc. 26).

27         A.   Juror Misconduct

28         Petitioner first contends that Juror number 6 should have been excused because of misconduct

5

in making an unauthorized telephone call and for her relationship to a potential witness at trial.  This contention is without merit.

### 1.  Standard of Review

Petitioner raised this claim by way of a habeas corpus petition in the California Supreme Court, which summarily rejected the claim without issuing a reasoned decision.  Where, as here, the state court reached a decision on the merits but provided no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784.

### 2.  Trial Hearing on Juror No. 6

During trial, Juror number 6 approached the bailiff and, out of earshot of other jurors, indicated to him that when she heard the testimony of Detective Sanchez, who mentioned the name of another deputy sheriff, Joseph Aguilar, who was Juror number 6's brother-in-law, she realized that her relative had worked on Petitioner's case.  (LD 12, p. 471)  At an in camera hearing, Juror number 6 told the judge that, during a recess and after she heard her brother-in-law's name mentioned by Sanchez, she called Aguilar, who told her only that he was under subpoena in this case.  (LD 12, p. 473)  Juror number 6 stated that Aguilar did not say anything else about the case and that she knew nothing else except that Aguilar's name had been mentioned by Sanchez.  (Id., p. 474)

The judge asked Juror number 6 if she could be fair and impartial, and she insisted she could. (Id., p. 475)  In response to queries from the judge, Juror number 6 also stated she was very close to Aguilar, he told her nothing about the case, she had not learned anything about the case from outside sources, and the fact that Aguilar may be involved in the case would not influence her.  (Id., p. 476)

During the colloquy, Juror number 6 also disclosed that, at some point in the past, her property

and that of her neighbors had been vandalized by Sureno gang members.  After Juror no. 6 spoke about the gang problem at a board of supervisors meeting, her vehicle was vandalized as well.  She was quoted in the local newspaper as referring to gang members as "cockroaches."  The judge asked her if she could be fair and impartial and Juror number 6 insisted that she could: "It doesn't matter what I've heard.  I went to gang unit presentations where, you know, it doesn't matter what I've heard, what I seen.  I don't know for a fact that he did anything."  (LD 12, pp. 477-479)

When asked for a response by the judge, defense counsel stated, "Not really, Your Honor.  It's kind of one of those tough calls."  (Id., p. 480)  The judge then ruled as follows: "She has made it clear that she believes that she can be fair.  I think she also made it clear that if her brother-in-law testified that she wouldn't be biased toward him, which he's not going to testify, but I don't see a reason to remove her."  (Id.)  Defense counsel replied, "Okay."  (Id.)

### 3.  Federal Standard

"In all criminal prosecutions," state and federal, "the accused shall enjoy the right to . . . trial  . . . by an impartial jury," U.S. Const., Amends. 6 and 14;  see Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444 (1968);  Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639 (1961).  "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury."  Tinsley v. Borg, 895 F.2d 520, 523-524 (9th Cir. 1990).  In reviewing a claim of juror misconduct, "[t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir.1974).  However, while the Supreme Court has never rejected the idea of implied juror bias, implied bias by a juror has rarely been applied.  See United States v. Plache; 913 F.2d 1375, 1377 (9th Cir. 1990); Tinsley v. Borg, 895 F.2d at 527.  "Only in extreme or extraordinary cases should bias be presumed."  Plache; 913 F.2d at 1377, quoting, Tinsley, 895 F.2d at 527.

Moreover, the Constitution "does not require a new trial every time a juror has been placed in a potentially compromising situation."  Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940 (1982).  The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.  Id.  Due process means only a jury capable and willing to decide the case

solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.  Id.  Although it is generally preferred that a trial court hold an evidentiary hearing when allegations of juror misconduct arise, it is not always required, particularly when the court knows the exact scope and nature of the misconduct.  See United States v. Halbert, 712 F.2d 388, 389 (9th Cir.1983); United States v. Hendrix, 549 F.2d 1225, 1227 (9th Cir.1977); see also United States v. McVeigh, 153 F.3d 1166, 1187 (10th Cir.1998).

The Ninth Circuit recognized that to disqualify a juror for cause requires a showing of actual bias or implied bias; that is, "bias in fact, or bias conclusively presumed as a matter of law." United States v. Gonzalez, 214 F.3d 1109, 1111-12 (9th Cir.2000).  There are three theories of juror bias based on a misstatement by a juror during voir dire: (1) McDonough-style bias (i.e., the juror fails to answer honestly and, had he answered correctly, the information would have provided a basis for a challenge for cause, see McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548 (1984)); (2) "actual bias, which stems from a pre-set disposition not to decide an issue impartially;" and (3) "implied (or presumptive) bias, which may exist in exceptional circumstances where, for example a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury."  Fields v. Brown, 503 F.3d 755, 766 (9th Cir.2007) (en banc).

If a juror failed to answer a voir dire question correctly, a petitioner may obtain a new trial by showing: (1) that the juror failed to answer honestly a voir dire question, and (2) that this undermined the impartiality of the petitioner's jury. See Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir.1998) (en banc).  The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of the trial. See McDonough, 464 U.S. at 556. Forgetfulness, for example, does not indicate lack of impartiality. See United States v. Edmond, 43 F.3d 472, 473-74 (9th Cir.1994) (no misconduct where district court found juror's testimony that he forgot about being victim of armed robbery truthful).

4.   Analysis

Although the state court properly conducted a full hearing and engaged Juror no. 6 in a meaningful colloquy about her ability to be fair and impartial, it also bears emphasis that the trial judge's exercise of his or her responsibility to be "ever watchful to prevent prejudicial occurrences and

to determine the effect of such occurrences when they happen," Smith, 455 U.S. at 217 n. 7, inherently involves the trial court's "appraisal of witness credibility and demeanor."  Thompson v. Keohane, 516 U.S. 99, 111 (1995).  In performing that function, the trial judge is best positioned to make decisions regarding credibility and demeanor; hence, the "judgment of the jurist-observer" has been given "presumptive weight" in these matters.  Id.  As a result, juror impartiality is a factual issue that is within the statutory presumption of correctness.  Id.; Wainwright v. Witt, 469 U.S. 412, 429 (1985); Tinsley, 895 F.2d at 525 ("findings of state trial and appellate courts on juror impartiality deserve 'a high measure of deference.'"); see Skilling v. United States, __U.S.__, 130 S.Ct. 2896, 2918 (2010)("reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality….").

Here, the state court conducted a full hearing on the issue, the juror was questioned, and both attorneys were afforded an opportunity to further question the juror and make arguments in support of their clients.  Neither attorney requested that Juror number 6 be removed.  Indeed, the lack of response to the judge's invitation for further inquiry would suggest that neither attorney believed that grounds for removing Juror no. 6 were present.  Moreover, the judge repeatedly asked Juror no. 6 if she could be fair and impartial, notwithstanding her relationship to Aguilar, a potential witness but not one that the judge expected to actually be called at trial, and despite her having been the victim on several occasions of gang intimidation and the vandalizing of her property.  Nothing in Juror number 6's responses suggested that she was unfairly biased against Petitioner or that she could not fully discharge her responsibilities as a juror.  In short, there is nothing in the record to support a conclusion that Juror number 6 was actually or impliedly biased and should have been removed from the jury by the trial judge.  Such critical credibility decisions, made by the "jurist-observer" who was actually present during Juror number 6's questioning, should not be overturned in the total absence of any evidence of prejudice or bias.

As mentioned, due process means only a jury capable and willing to decide the case solely on the evidence before it and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Smith v. Phillips, 455 U.S. at 217.  That appears to be precisely took place in this case, i.e., a juror willing to decide the case impartially and a

judge carefully monitoring the situation to assess whether the jury could, in fact, be impartial.  Due process was not violated.  Hence, the Court's independent review of the record supports the conclusion that the claim should be rejected.

B.    Ineffective Assistance of Trial Counsel Regarding Juror Number 6

Petitioner next contends that trial counsel was ineffective for not conducting a sufficient inquiry into Juror number 6's potential bias.

1.    Standard of Review

The state supreme court summarily denied Petitioner's habeas claim on this issue.  Accordingly, as with the prior claim, the Court will independently review this claim.

2.    Federal Standard For Ineffective Assistance of Counsel

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a

federal court believes the state court's determination under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold."  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Knowles</u>, 129 S.Ct. at 1420.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003).  Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

### 3.  <u>Analysis</u>

As Respondent correctly points out, the state court, in summarily rejecting Petitioner's claim of ineffective assistance of counsel, could have reasonably concluded that because the trial judge conducted a full and thorough hearing into the question of Juror number 6's potential bias, and because the juror's responses showed that no misconduct had occurred and that she was not actually or impliedly biased against Petitioner, defense counsel could not have been ineffective for failing to ask additional questions during the in camera hearing.  Petitioner does not indicate what additional questions counsel should have asked or why asking those questions would have led to dismissal of Juror number 6, or even how, if Juror number 6 were dismissed, it is likely that Petitioner would have received a more favorable verdict.  In other words, Petitioner shows neither deficient conduct nor prejudice.  Accordingly, his claim should be rejected.

### C.  <u>Denial of Bifurcation Motion</u>

Petitioner contends that the trial court violated his federal due process rights by denying the motion to bifurcate the trial on the gang enhancements from the substantive criminal charges.

### 1.  <u>The 5th DCA's Opinion</u>

In rejecting this claim, the 5th DCA reasoned as follows:

**Standard of Review**

The denial of a motion to bifurcate the trial of a gang enhancement is reviewed for abuse of

discretion. (People v. Hernandez (2004) 33 Cal.4th 1040, 1048 (Hernandez).)  Even if some of the evidence offered to prove a gang enhancement would be inadmissible at a trial of the substantive offense, a trial court still may deny bifurcation.  (Id. at p. 1050.)

**Analysis**

Gang evidence may be relevant to establish "identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.]"  (Hernandez, supra, 33 Cal.4th at p. 1049.)  Under these circumstances, a gang enhancement is inextricably intertwined with the substantive offense and bifurcation would not be necessary.  (Id. at pp. 1048–1050.)  "To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary. [Citation.]"  (Id. at pp. 1049–1050.)

"Even if some of the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself ... a court may still deny bifurcation." (Hernandez, supra, 33 Cal.4th at p. 1050.)  Hernandez explained that a "trial court's discretion to deny bifurcation of a charged gang enhancement is ... broader than its discretion to admit gang evidence when the gang enhancement is not charged." (Ibid.)

The Hernandez opinion noted that much of the gang evidence presented in that case was relevant to the charged offense, specifically on the issues of motive and intent.  (Hernandez, supra, 33 Cal.4th at p. 1051.)  Hernandez acknowledged that evidence of prior criminal acts by the defendants' fellow gang members and some of the expert testimony would not have been admissible at a trial that was limited to the charged offense (ibid.), but held that the trial court had acted within its discretion in denying the motion to bifurcate (ibid.).

Here, gang evidence was inextricably intertwined with the substantive offense.  It clearly was relevant to establish motive and intent and to dispel the claim of self defense.  Zayas told officers that Surenos had shot and killed his brother in 2001.  After his brother's death, Zayas affiliated himself with the Nortenos, including obtaining Norteno gang tattoos.  The victim, Bello, was wearing the color blue, identified with Sureno gang members, and shoes, Nike Cortez, that commonly are worn by Sureno gang members.

Santos Hernandez stated he and his companions, including Zayas, "went out looking to go and retaliate against Southern gang members" the night Bello was shot.  Zayas, though, claimed he "was just defending himself" and was "acting in self-defense."  Bello had no weapon on or near him at the time of the shooting.

Under the facts of this case, we conclude the trial court acted within its discretion in refusing to bifurcate trial of the gang enhancement from trial of the charged offenses.  (Hernandez, supra, 33 Cal.4th at pp. 1050–1051.)

We also reject Zayas's due process claim.  The trial court dispelled any potential for prejudice by correctly and expressly instructing the jury on the limited use of gang evidence.  The jury was informed that the gang evidence could not be used to establish Zayas was a person of bad character or that he had a predisposition to commit crimes.  We presume the jury followed the instructions.  (People v. Holt (1997) 15 Cal.4th 619, 662.)

(Zayas, 2012 WL 2358046, at *2-3).

            1.   Federal Standard and Analysis

As correctly argued by Respondent, there is no clearly established Federal law which holds that

joinder or consolidation of charges may violate the Constitution. In <u>United States v. Lane</u>, 474 U.S. 438, 446 n. 8 (1986), the Supreme Court stated in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." However, in <u>Young v. Pliler</u>, the Ninth Circuit stated:

> <u>Lane</u> considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented. <u>See Lane</u>, 474 U.S. 438, 446 & n. 9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, <u>Lane</u>'s broad statement-found in a footnote without citation to any legal authority-that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was probably dictum. Only Supreme Court holdings are controlling when reviewing state court holdings under 28 U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting habeas relief. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

<u>Young</u>, 273 Fed.Appx. 670, n. 1, 2008 WL 1757564 (9th Cir.2008) (unpublished); <u>see also Collins v. Runnels</u>, 603 F.3d 1127, 1132–33 (9th Cir.2010).

In ascertaining the "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams</u>, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Id</u>.  Given that there is no clearly established federal law in this instance, the Court cannot grant relief, since habeas relief is triggered only when the state court adjudication runs afoul of clearly established federal law. <u>See Moses v. Payne</u>, 555 F.3d 742, 754 (9th Cir. 2009)(absent a Supreme Court decision that squarely addresses the issue it "cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent…and so we must defer to the state court's decision").

However, even assuming, arguendo, that the Supreme Court's footnote could be considered clearly established Federal law, no constitutional violation occurred in this case.  "Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his right to a fair trial." <u>United States v. Lane</u>, 474 U.S. 438, 446, fn. 8.  Joinder of offenses results in a constitutional violation only if it renders a state trial unfair and violates due process.  <u>Herring v. Meachum</u>, 11 F.3d 374, 377 (2nd Cir.

13

1993).  A defendant must show that actual prejudice resulted from the events as they unfolded during

trial.  Herring, supra, 11 F.3d at 378, citing Opper v. U.S., 348 U.S. 84, 94-95 (1954).  This prejudice is

shown if the impermissible joinder had a substantial and injurious effect or influence in determining the

jury's verdict.  See Bean v. Calderon, 163 F.3d 1073, 1086 (9th Cir.1998); Spencer v. Texas, 385 U.S.

554, 562 (1967) (while some prejudice may flow from joinder of offenses in criminal offenses, the risk

is justified by convenience and guarded against by limiting instructions); Featherstone v. Estelle, 948

F.2d 1497, 1503 (9th Cir. 1991) (consolidation rests in the sound discretion of the state trial court).

Petitioner has not made the required showing that joinder of Petitioner's substantive charges

with his gang enhancement charges resulted in actual prejudice. The 5th DCA rejected this claim

expressly because of a lack of prejudice.  The state court reasoned that the claimed prejudice, i.e.,

admission of the gang evidence during the trial on the substantive charges, would be admissible not

merely to gang enhancements but also to the substantive charges because such evidence was relevant to

motive and intent.  Accordingly, because the gang evidence would have been admissible in the trial on

the substantive charges, Petitioner cannot show that bifurcation would have eliminated the purported

prejudice by admitting such evidence, nor that lack of bifurcation altered the outcome in any way.

Accordingly, the state court adjudication was not objectively unreasonable and, thus, the claim should

be rejected.

D.   Failure to Excuse Juror

Petitioner also contends that his due process rights were violated when the trial court failed to

excuse a juror who indicated she might know someone related to Petitioner and expressed some fear for

herself and her family.

1.   The 5th DCA's Opinion

The state court rejected this claim with the following reasoning:

**Factual Summary**

During the presentation of the defense case and outside the presence of the jury, the trial court
stated that Juror No. 2 had approached the bailiff and indicated that "she may recognize one of
the family members from working in the same school."  The bailiff clarified that Juror No. 2
was not certain if it was the person she knew because she did not "have her glasses on" and that
there had been no contact or interaction between Juror No. 2 and this person in court.

The trial court had Juror No. 2 brought into the courtroom.  She confirmed that when she left for

14

lunch, she noticed a "young lady over there" that she either "used to work with" or still worked with, but she was not certain.  She did not "want to do anything wrong" by failing to report what she had noticed.  When questioned by the trial court, Juror No. 2 stated she worked at an elementary school.

Juror No. 2 related that the person she knew worked at the same elementary school; however, they did not have much contact.  The trial court asked Juror No. 2 to assume it was the person she knew and then asked, "[W]ould that in any way influence your ability to reach a fair verdict in this case?"  Juror No. 2 responded that it would not affect her verdict.

Juror No. 2 then added that the school where she worked had "a reputation where it's at" and that she was "a little bit bothered" for "safety purposes."  She stated, "I don't know if this is the person. They know who I am and where I work and I just don't know."  The trial court responded that Juror No. 2 was "going to have to let us know," and that the trial court could inquire as to the identity of the young lady if necessary.  The trial court then asked Juror No. 2 if she could listen to the evidence and base her decision on the evidence and "not from any other source."  Juror No. 2 responded affirmatively.

After Juror No. 2 left the courtroom, the trial court asked the prosecutor and defense counsel if there was anything else.  Defense counsel indicated he felt Juror No. 2 had expressed fear about reaching a decision.  The trial court opined that it viewed Juror No. 2's comments as concern about the location of the school where she worked, but that she had unequivocally stated she could reach a verdict based purely on the evidence.  Defense counsel submitted the matter and the trial court ruled that Juror No. 2 would remain.

Zayas now contends Juror No. 2 should have been dismissed or a further inquiry should have been made.

**Standard of Review**

"The decision whether to investigate possible juror bias, incompetence, or misconduct, as well as the ultimate decision whether to retain or discharge a juror, rests within the sound discretion of the trial court. [Citation.]  If any substantial evidence exists to support the trial court's exercise of its discretion, the court's action will be upheld on appeal. [Citation.]" (People v. Maury (2003) 30 Cal.4th 342, 434.)  As our Supreme Court notes, "a hearing is required only where the court possesses information which, if proven to be true, would constitute 'good cause' to doubt a juror's ability to perform his [or her] duties and would justify his [or her] removal from the case." (People v. Ray (1996) 13 Cal.4th 313, 343 (Ray).)

**Analysis**

A trial court must conduct a sufficient inquiry when put on notice that cause to discharge a juror may exist.  (People v. Barnett (1998) 17 Cal.4th 1044, 1117.) The ultimate decision whether to retain or discharge a juror is subject to the discretion of the trial court.  That discretion is limited to the extent that the juror's inability to perform his or her functions must appear in the record as a "demonstrable reality" and the trial court must not presume the worst of a juror. (People v. Bowers (2001) 87 Cal.App.4th 722, 729.)

Here, by questioning Juror No. 2, the trial court elicited her response that she could evaluate the case based only upon the evidence, not consider facts from any other source, and she felt she could be fair to both sides in the case.  Juror No. 2's expression of being "a little bit bothered" and being "scared" in the past were, as the trial court noted, expressions of concern about the location of the school where she worked.  The trial court did not abuse its discretion in concluding that further inquiry was not needed. (Ray, supra, 13 Cal.4th 313, 344.)

Zayas's claim that defense counsel rendered ineffective assistance by failing to request a more detailed inquiry fails in light of our conclusion that the trial court conducted an adequate inquiry and did not abuse its discretion in concluding that further inquiry was not needed.

(Zayas, 2012 WL 2358046, at *3-4).

### 2. Federal Standard

The standard of review has already been discussed in a previous section and will not be repeated herein.

### 3. Analysis

As discussed in a previous section, implied bias is rarely found, and "[o]nly in extreme or extraordinary cases should bias be presumed." Plache; 913 F.2d at 1377, quoting, Tinsley, 895 F.2d at 527. Moreover, to disqualify a juror for cause requires a showing of "bias in fact, or bias conclusively presumed as a matter of law." United States v. Gonzalez, 214 F.3d at 1111-12. Finally, it is the trial judge's responsibility to be "ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen," Smith, 455 U.S. at 217 n. 7, a task that, as here, necessarily involves the judge's "appraisal of witness credibility and demeanor." Thompson , 516 U.S. at 111. The trial judge is best positioned to make decisions regarding credibility and demeanor; this is why the "judgment of the jurist-observer" has been given "presumptive weight" in these matters. Id.

Here, the 5th DCA relied upon the fact that the trial judge conducted a hearing at which he asked Juror number 2 about her concerns and fears regarding serving on the jury. However, she also indicated she could evaluate the case based only upon the evidence, she would not consider facts from any other source, and she felt she could be fair to both sides in the case. The appellate court also noted Juror Number 2's expression of being "a little bit bothered" and being "scared" in the past were, as the trial court noted, expressions of concern about the location of the school where she worked. Because juror impartiality is a factual issue that is within the statutory presumption of correctness, the trial judge's findings are to be given great deference in these proceedings absent a showing that the findings are unreasonable. Id.; Wainwright v. Witt, 469 U.S. at 429 (1985); Tinsley, 895 F.2d at 525 ("findings of state trial and appellate courts on juror impartiality deserve 'a high measure of deference.'"). Here, the record does not suggest, and Petitioner has not established, any grounds for controverting the trial court's findings of fact that Juror number 2 was capable of being a fair and objective juror.

Accordingly, Petitioner's claim that his due process rights were violated by the state court's failure to excuse Juror number 2 should be denied.[2]

### E. Admission of Gang Evidence

Petitioner next contends that his due process rights were violated when the trial court permitting the introduction of gang evidence. This contention lacks merits.

#### 1. The 5th DCA's Opinion

The 5th DCA denied this claim as follows:

> Zayas contends the trial court abused its discretion in admitting evidence that a shotgun and three letters from Norteno jail inmates were found in his bedroom as a result of a search conducted pursuant to a search warrant and that admission of this evidence denied him due process. On appeal, we apply an abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence. (People v. Waidla (2000) 22 Cal.4th 690, 724 (Waidla).)

> **Factual Summary**

> Initially, the trial court granted a defense request to exclude evidence of a stolen shotgun found hidden in Zayas's bedroom when it was searched. The trial court's initial ruling on the three letters from Norteno gang members was that they were admissible to help establish Zayas's gang affiliation.

> Shortly thereafter, a discussion ensued regarding admissibility of photographs, some of which depicted the stolen shotgun and shotgun shells. The defense argued the pictures were inadmissible, as the shotgun had not been used in the current offense. The prosecutor argued the shotgun was found with gang indicia and was relevant to show Zayas was an active gang member.

> Ultimately, the trial court ruled that the photos of the shotgun and ammunition would be admissible, but no mention was to be made of it being stolen. The trial court articulated that the gang expert would be testifying regarding gang indicia, including that gang members carry weapons.

> The officer who conducted the search of Zayas's bedroom testified that the shotgun had not been used in the commission of the charged offenses. The gang expert testified that it was "common for gang members to carry firearms" but also acknowledged that nongang members own weapons.

> As for the three letters, the same officer testified that "three pieces of inmate-generated mail" were found in Zayas's bedroom and were addressed to Zayas; the return address was the local jail. On cross-examination, the officer acknowledged he was unaware the letters were from relatives of Zayas's. The gang expert opined that Zayas was a Norteno gang member, an opinion the expert reached in part based upon Zayas's receipt of three letters from Norteno gang members. The expert testified on cross-examination that he had not read the three letters and

---

[2] As with the previous juror misconduct argument, here, Petitioner also contends that his counsel was ineffective for failing to require a more detailed inquiry into the juror's conduct. However, as the 5th DCA noted, if the trial judge's inquiry was constitutionally sufficient, as this Court has concluded it was, then it necessarily follows that trial counsel's representation was not deficient for failing to demand that additional questions be put to the juror.

did not know they were from family members.

When Zayas was questioned after his arrest, he denied ever owning "any shotguns in the past." When Zayas testified at trial, he explained he owned the shotgun found in his room in "the present," and he had not owned any shotguns in the past. Zayas testified he acquired the shotgun for protection of his home and stated the three letters were from relatives who he thought were in jail for drug offenses, not gang offenses.

In closing arguments, the prosecutor briefly mentioned the three letters. Defense counsel also briefly mentioned the three letters and the shotgun.

**Analysis**

Article I, section 28, subdivision (f)(2) of the California Constitution provides in relevant part that "relevant evidence shall not be excluded in any criminal proceeding." Evidence Code section 351 declares that "Except as otherwise provided by statute, all relevant evidence is admissible." Relevant evidence is that "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Id., § 210.) The only limitation on the admission of relevant evidence found in the Evidence Code, absent a specific exclusion, is that its probative value not be outweighed substantially by a danger of undue prejudice, or it necessitates undue consumption of time. (Id., § 352.)

Here, the trial court conducted an Evidence Code section 352 hearing. The prosecutor contended the items found in Zayas's bedroom helped establish Zayas was a gang member. Zayas was charged with a gang special circumstance appended to the murder count and also with the gang enhancement set forth in Penal Code section 186.22, subdivision (b). The defense claimed the items were not relevant. Ultimately, the trial court determined the items were relevant and probative of whether Zayas was an active participant in a criminal street gang.

As a general rule, evidence of gang membership and activity is admissible if it is relevant to some material issue in the case. Consequently, gang evidence may be relevant to establish a defendant's motive, intent, or some fact concerning the charged offenses. (People v. Albarran (2007) 149 Cal.App.4th 214, 223–224 (Albarran).) Zayas was charged with both the gang offense and the gang enhancement set forth in Penal Code section 186.22, subdivision (b); therefore, any evidence tending to support those charges was relevant under Evidence Code section 351. The evidence regarding the shotgun and the three letters was used by the gang expert as support for his opinion that Zayas was a gang member. The evidence of the shotgun also was admissible to rebut Zayas's statement to officers after his arrest.

The decision on whether evidence, including gang evidence, is relevant and not unduly prejudicial, and therefore admissible, rests within the discretion of the trial court. (Albarran, supra, 149 Cal.App.4th at pp. 224–225.) When a discretionary power is statutorily vested in the trial court, its exercise of that discretion should not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner. (Id. at p. 225.) Zayas has the burden of proving an abuse of discretion. (Ibid.)

Zayas has failed to establish that admission of the evidence was an abuse of discretion. There was nothing arbitrary, capricious, or patently absurd about the trial court's ruling. An Evidence Code section 352 hearing was held; the trial court determined the evidence was relevant to a charged offense and an enhancement; and there was nothing inflammatory or prejudicial about the evidence. The prejudice the statute seeks to avoid is not the damage to a defense that naturally flows from highly probative evidence. (People v. Karis (1988) 46 Cal.3d 612, 638.) "Rather, the statute uses the word in its etymological sense of 'prejudging' a person or cause on the basis of extraneous factors." (People v. Farmer (1989) 47 Cal.3d 888, 912, *overruled on another ground in* Waidla, supra, 22 Cal.4th at p. 724, fn. 6.)

18

We conclude the trial court did not abuse its discretion in admitting this evidence. (<u>People v. Guerra</u> (2006) 37 Cal.4th 1067, 1113.)

(<u>Zayas</u>, 2012 WL 2358046, at *4-5).

2.   <u>Federal Standard</u>

First, the United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process.  <u>See</u>  <u>Estelle v. McGuire</u>, 502 U.S. at 75, n. 5; <u>see</u> <u>Holgerson v. Knowles</u>, 309 F.3d 1200, 1202 (9th Cir.2002) (habeas relief not warranted unless due process violation clearly established by the Supreme Court); <u>Garceau v. Woodford</u>, 275 F.3d 769, 774 (9th Cir. 2001), *reversed on other grounds*, <u>Woodford v. Garceau</u>, 538 U.S. 202 (2003)(the Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith....").  In this regard, in <u>Holley v. Yarborough</u>, 568 F.3d 1091 (9th Cir. 2009), the Ninth Circuit explained as follows:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ [of habeas corpus] should be issued when constitutional errors have rendered the trial fundamentally unfair [Citations], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

<u>Holley</u>, 568 F.3d at 1101.  Hence, the state courts' rejection of Petitioner's claim *could not* have been "contrary to, or an unreasonable application of, clearly established" United States Supreme Court authority, since no such "clearly established" Supreme Court authority exists.  28 U.S.C. § 2254(d)(1).

Second, Petitioner's claim would normally sound only in state law and, therefore, would not be cognizable in federal habeas proceedings. A federal habeas corpus court has no authority to review a state's application of its own laws, but rather must determine whether a prisoner's constitutional or other federal rights have been violated.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Jackson v. Ylst</u>, 921 F.2d 882, 885 (9th Cir. 1990).  Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding.  <u>Estelle</u>, 502 U.S. at 67; <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).

Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process.  <u>Estelle</u>, 502 U.S. at 72; <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984); <u>Walters v. Maas</u>, 45 F.3d 1355, 1357 (9th Cir. 1995); <u>Jeffries</u>

19

1  v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); Gordon v. Duran,

2  895 F.2d 610, 613 (9th Cir.1990).  However, the failure to comply with state rules of evidence alone is

3  neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.

4  Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no permissible

5  inferences that the jury may draw from the evidence can its admission rise to the level of a due process

6  violation.  Id. at 920.  Intent is a permissible inference that the jury may draw from the evidence of

7  prior bad acts.  See, Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

8          3.  Analysis

9          Petitioner failed to show that no permissible inferences existed that the jury might draw from

10  the challenged evidence; accordingly, the claim does not rise to the level of a federal constitutional

11  claim and is, therefore, merely an issue of state law that is not cognizable in these proceedings.

12          Moreover, the state court properly concluded that permissible inferences existed for the

13  challenged evidence because the evidence was relevant and probative of various elements of the gang

14  enhancements with which Petitioner was charged.  Under California law, the gang-related sentence

15  enhancement required proof that the crime for which Petitioner was convicted was "committed for the

16  benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to

17  promote, further, or assist in any criminal conduct by gang members…"  Cal. Pen. Code §186.22(b)(1).

18  In order to prove the other gang-related enhancement, the prosecution had to establish that Petitioner

19  committed the offense while "an active participant in a criminal street gang…and the murder was

20  carried out to further the activities of the criminal street gang."  Cal. Pen. Code § 190.2(a)(22).  Even a

21  cursory review of the gang-related evidence contained in the trial record shows that this evidence was

22  relevant to establishing the above-referenced enhancements.  Accordingly, the gang-related evidence

23  was susceptible to legitimate inferences by the jury regarding the elements of the enhancements for

24  which the jurors were tasked with returning a verdict.

25          Finally, even if it could be contended that the volume of gang-related evidence violated due

26  process, any error was harmless.  Forensic evidence, eyewitness testimony, and even Petitioner's own

27  testimony at trial provided overwhelming evidence that Petitioner killed the victim.  On the other hand,

28  exculpatory evidence, e.g., Petitioner's consumption of alcohol and drugs, and his "belief" that the

1   victim might be drawing a weapon, were factors that were unpersuasive or incredible. Under such

2   circumstances, the challenged gang-related evidence, even if found to be unnecessarily cumulative,

3   could not reasonably be said to have swayed the jury's judgment.  Thus, the error, if any, was harmless,

4   and the claim should be denied.  Brecht, 507 U.S. at 623.

5            F.  Prosecutorial Misconduct During Closing Argument

6            Petitioner next contends that his due process rights were violated when the prosecutor

7   purportedly made comments in closing argument about the fact that Petitioner had testified.  Petitioner

8   duly raised this issue in his first state habeas petition, but the California Supreme Court summarily

9   denied the claim without a reasoned decision.  Accordingly, after conducting an independent review of

10  this claim, the Court recommends that it be denied.

11           1.  Federal Standard

12           Under clearly established federal law, a prosecutor's improper comments will be held to violate

13  the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a

14  denial of due process."  Parker v. Matthews, ––– U.S. ––––, ––––, 132 S.Ct. 2148, 2153 (2012) (per

15  curiam) (quoting Darden v. Wainright, 477 U.S. 168, 181–183 (1986)); see Sassounian v. Roe, 230

16  F.3d 1097, 1106 (9th Cir.2000).  Prosecutorial misconduct deprives the defendant of a fair trial as

17  guaranteed by the Due Process Clause if it prejudicially affects the substantial rights of a defendant.

18  United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir.1988) (citing Smith v. Phillips, 455 U.S. 209,

19  219 (1982)).

20           The standard of review of claims concerning prosecutorial misconduct in a § 2254 proceeding is

21  the narrow standard of due process, and not the broad standard that applies in the exercise of

22  supervisory power; improper argument does not, per se, violate a defendant's constitutional rights.

23  Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir.2002) (citing Thompson v. Borg, 74 F.3d 1571, 1576

24  (9th Cir.1996)).  This Court must thus determine whether the alleged misconduct has rendered a trial

25  fundamentally unfair.  Darden v. Wainwright, 477 U.S. at 183.  It must be determined whether the

26  prosecutor's actions constituted misconduct and whether the conduct violated Petitioner's right to due

27  process of law.  Drayden v. White, 232 F.3d 704, 713 (9th Cir.2000).

28           To grant habeas relief, this Court must conclude that the state court's rejection of the

21

1   prosecutorial misconduct claim "was so lacking in justification that there was an error well understood

2   and comprehended in existing law beyond any possibility for fairminded disagreement."  Parker v.

3   Matthews, 132 S.Ct. at 2155 (quoting Harrington v. Richter, 131 S.Ct. at 767–87). The standard of

4   Darden v. Wainwright is a very general one that provides courts with more leeway in reaching

5   outcomes in case-by-case determinations.  Parker, 132 S.Ct. at 2155 (quoting Yarborough v. Alvarado,

6   541 U.S. 652, 664 (2004)).

7        In determining whether the prosecutor's remarks rendered a trial fundamentally unfair, the

8   remarks must be analyzed in the context of the entire proceeding.  Boyde v. California, 494 U.S. 370,

9   385 (1990); Darden, 477 U.S. at 179–182.  Furthermore, counsel are "given latitude in the presentation

10  of their closing arguments, and courts must allow the prosecution to strike hard blows based on the

11  evidence presented and all reasonable inferences therefrom."  Ceja v. Stewart, 97 F.3d 1246, 1253–

12  1254 (9th Cir.1996) (quoting United States v. Baker, 10 F.3d 1374, 1415 (9th Cir.1993)).  A reviewing

13  court should consider challenged remarks in light of the realistic nature of closing arguments at trial.

14  "Because 'improvisation frequently results in syntax left imperfect and meaning less than crystal clear,'

15  'a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most

16  damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the

17  plethora of less damaging interpretations'."  Williams v. Borg, 139 F.3d 737, 744 (9th Cir.) (quoting

18  Donnelly v. DeChristoforo, 416 U.S. 637, 646–647 (1974)), cert. denied, 525 U.S. 937 (1998).  Finally,

19  even when prosecutorial misconduct rises to the level of a due process violation, such misconduct

20  provides grounds for habeas relief only if that misconduct is prejudicial under the harmless error test

21  articulated in Brecht v. Abrahamson, 507 U.S. 619, 637–638 (1993). Shaw v. Terhune, 380 F.3d 473,

22  478 (9th Cir.2004).

23       Factors to be considered in determining whether habeas corpus relief is warranted include

24  whether the prosecutor manipulated or misstated the evidence; whether his comments implicated other

25  specific rights of the accused; whether the objectionable content was invited or provoked by defense

26  counsel's argument; whether the trial court admonished the jurors; and the weight of evidence against

27  the defendant. Darden, 477 U.S. at 181 (quoting Donnelly, 416 U.S. 637, 643 (1974).) "[T]he Darden

28  standard is a very general one, leaving courts 'more leeway...in reaching outcomes in case-by-case

1   determinations [ ]' (Yarborough v. Alvarado, 541 U.S. 652, 664, (2004)).....";  Parker, 132 S.Ct. at 2155.

2   Thus, even where a prosecutor's argument, questions or behavior are found improper, relief is limited to

3   cases in which a petitioner can establish that the misconduct resulted in actual, substantial prejudice.

4         2.   Analysis

5         The gravamen of Petitioner's complaint is that, during closing argument, the prosecutor made

6   inappropriate comments about Petitioner's testimony at trial, e.g., that Petitioner "wanted to get up here

7   and tell you a story and that's exactly what he did," and that Petitioner "wants to get up here and feed

8   you a story and that's exactly what he did…." (Doc. 26, p. 40).  Petitioner contends that such argument

9   served only to inflame the passions of the jury and therefore violated due process.  (Id.).

10        A criminal defendant's rights against self-incrimination, as contained in the Fifth Amendment

11  and applied to the states via the Fourteenth Amendment, forbids "comment by the prosecution on the

12  accused's silence."  Griffin v. California, 380 U.S. 609, 615 (1965). Thus, the Due Process Clause

13  prohibits a prosecutor from commenting on a defendant's decision not to testify."  Hovey v. Ayers, 458

14  F.3d 892, 912 (9th Cir.2006) (citing Griffin, 380 U.S. at 615).  "While a direct comment about the

15  defendant's failure to testify always violates Griffin, a prosecutor's indirect comment violates Griffin

16  only 'if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a

17  character that the jury would naturally and necessarily take it to be a comment on the failure to

18  testify.'"  Id. (quoting Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir.1987)).  A Griffin error is harmless,

19  and thus does not require reversal, unless, "'such comment is extensive, where an inference of guilt

20  from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could

21  have supported acquittal.'"  Hovey, 458 F.3d at 912.

22        Here, of course, Petitioner is not contending the prosecutor improperly commenting on his

23  failure to testify, but rather on Petitioner's actual testimony, which the prosecutor characterized as a

24  "story."  It is well-established that a prosecutor has "reasonable latitude" to make his or her closing

25  statement and that comment upon the credibility of witnesses, including the defendant, is entirely

26  appropriate.  Ceja v. Stewart, 97 F.3d at 1253– 1254 (prosecutors must be "given latitude in the

27  presentation of their closing arguments, and courts must allow the prosecution to strike hard blows

28  based on the evidence presented and all reasonable inferences therefrom.") (emphasis supplied).

Taking Petitioner's claim at face value, the prosecutor's characterization, on two occasions, of Petitioner's testimony as a "story," was well within the prosecutor's wide latitude to make such credibility arguments since "[c]riticism of defense theories and tactics is a proper subject of closing argument." See United States v. Sayetsitty, 107 F.3d 1405, 1409 (9th Cir.1997) (citation omitted). See e.g., U.S. v. Del Toro–Barboza, 673 F.3d 1136, 1151 (9th Cir.2012) (characterizing defense strategy as "the Wizard of Oz trick"); United States v. Ruiz, 710 F.3d 1077, 1086 (9th Cir.2013) (characterizing defense case as "smoke and mirrors" directed to defense case and not counsel); Williams v. Borg, 139 F.3d 737, 744– 45 (9th Cir.1998) (calling defendant's argument "trash" not misconduct; "He did not say the man was 'trash'; he said the argument was. A lawyer is entitled to characterize an argument with an epithet as well as a rebuttal."); United States v. Bernard, 299 F.3d 467, 487-88 (5th Cir.2002) (rejecting a challenge to a prosecutor's closing argument that accused the defense of trying "to get someone on this jury to...take a red herring"). For these reasons, this claim should be rejected.

### G.  Ineffective Assistance of Counsel

Petitioner contends that trial counsel was ineffective for permitting the introduction of Petitioner's school records. Respondent contends that the claim is untimely and procedurally barred by the state court's adjudication. As mentioned, this claim and the following claim were presented in a state court habeas petition subsequent to the conclusion of direct review and were included in these proceedings for the first time in the first amended petition.

#### 1.  Timeliness

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118 S.Ct. 586 (1997). The original petition was filed on November 18, 2013, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Though the original petition appears to be timely under the AEDPA, the Court notes that over thirteen months passed between the filing of the original petition on November 18, 2013, and the first amended petition, filed on December 29, 2014, wherein this claim first appears.  As mentioned, the AEDPA affords a petitioner only twelve months within which to file a timely habeas claim.  Since the limitations period is not tolled for the time a federal habeas corpus application is pending in federal court, Duncan v. Walker, 533 U.S. 167, 181-182 (2001); see Fail v. Hubbard, 272 F.3d 1133, 1135-1136 (9th Cir.2001), it is patent that, regardless of the amount of statutory tolling to which Petitioner may be entitled prior to the filing the original timely petition, the limitation period expired during the pendency of this case, i.e., between the filing of the original petition and the first amended petition.

Nevertheless, a close examination of the chronology leading to the filing of the first amended petition is required.  Petitioner's direct review would have concluded on November 27, 2012, when the ninety-day period for filing a petition for writ of certiorari with the United States Supreme Court expired following the California Supreme Court's denial of his petition for review on August 29, 2012.  Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).  Petitioner would then have one year from the following day, November 28, 2012, or until November 27, 2013, absent applicable tolling, within which to file his federal petition for writ of habeas corpus.

25

1    Under the AEDPA, a petitioner will be entitled to statutory tolling during the time that a

2  properly filed application for state post-conviction or other collateral review is pending in state court.

3  28 U.S.C. § 2244(d)(2).  A properly filed application is one that complies with the applicable laws and

4  rules governing filings, including the form of the application and time limitations.  Artuz v. Bennett,

5  531 U.S. 4, 8, 121 S. Ct. 361 (2000).  An application is pending during the time that 'a California

6  petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay

7  in the intervals between a lower court decision and the filing of a petition in a higher court.  Delhomme

8  v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), abrogated on other grounds as recognized by Waldrip v.

9  Hall, 548 F. 3d 729 (9th Cir. 2008)(per curium)(internal quotation marks and citations omitted); see

10  Evans v. Chavis,  546 U.S. 189, 193-194 (2006); see Carey v. Saffold, 536 U.S. 214, 220, 222-226

11  (2002); see also, Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

12    Petitioner filed two state habeas petitions in the California Supreme Court.  The first was not

13  filed until April 22, 2013, when 146 days of the one-year period had elapsed.  (LD 6).  Petitioner thus

14  had only 219 days remaining on the limitation period.  When the petition was denied on June 12, 2013,

15  the limitation period re-commenced the following day and continued to run unabated until it expired

16  219 days later on January 18, 2014.  Petitioner did not file his second habeas petition in the California

17  Supreme Court until July 28, 2014, over six months later.  However, the latter petition affords

18  Petitioner no statutory tolling since a petitioner is not entitled to tolling where the limitations period has

19  already run prior to filing a state habeas petition.  Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000);

20  Jiminez v. Rice, 276 F.3d 478 (9th Cir. 2001);  see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.

21  2000)(same); Ferguson v. Palmateer, 321 F.3d 820 (9th Cir. 2003)("section 2244(d) does not permit the

22  reinitiation of the limitations period that has ended before the state petition was filed."); Jackson v.

23  Dormire, 180 F.3d 919, 920 (8th Cir. 1999) (petitioner fails to exhaust claims raised in state habeas

24  corpus filed after expiration of the one-year limitations period).[3]  Therefore, the only way for the two

25  claims presented for the first time in the first amended petition to be timely would be if they "relate

26  back" to the claims in the original petition.

27

28
_____

[3] As mentioned, the one-year period is not tolled during the pendency of a federal habeas petition such as the one in this
case. Duncan v. Walker, 533 U.S. at 181-182.

Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  The rule applies in habeas corpus proceedings.  Mayle v. Felix, 545 U.S. 644, 650 (2005); Anthony v. Cambra, 236 F.3d 568, 576 (9th Cir. 2000).   In Mayle, the United States Supreme Court held that relation back is in order if the claim to be amended into the petition is tied to the original timely petition by "a common core of operative facts."  Mayle, 545 U.S. at 664.

Conversely, the claim does not relate back when it asserts a new ground for relief supported by facts that differ in both "time and type" from those the original pleading set forth.  Id. at 650.   The Mayle court expressly rejected the Ninth Circuit's interpretation of the rule that a claim relates back if it arises merely from the same judgment and conviction.  Id. at 656-657.  Thus, relation back is "ordinarily allowed 'when the new claim is based on the same facts as the original pleading and only changes the legal theory.'"  Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001), quoting 3 J. Moore, et al., Moore's Federal Practice § 15.19[2], pp. 15-82 (3d ed. 2004).

Here, as Respondent correctly contends, it is clear that the instant claim does not relate back, either factually or legally, to any other claim in the original petition.  Although other claims in the first amended petition are also premised upon the general complaint of ineffectiveness of counsel, this claim is the only claim that centers upon counsel's introduction of Petitioner's school records. As such, this claim is factually distinct from the other claims of ineffective assistance since it does not share a "common core of operative facts" with the other ineffectiveness claims. Petitioner's contention, in the Traverse, that both ineffectiveness claims "call into question counsel's 'overall performance,'" are specious in that they gloss over the obvious fact that the "operative facts" on which Petitioner challenges counsel's "overall performance" are entirely different in each claim. (Doc. 41, p. 26).  Thus, although the original petition was timely under the AEDPA, the instant claim is not.  Mayle v. Felix, supra.  Hence, the claim should be rejected on this ground.

### 2.  Procedural Bar

This claim for relief and the following one were raised in a habeas corpus petition filed subsequent to the direct appeal and denied by the California Supreme Court with a citation to In re

<u>Clark</u>, 5 Cal.4[th] at 797-798.  (LD 17).  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991); <u>LaCrosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001); <u>see Ylst v. Nunnemaker</u>, 501 U.S. 797, 801 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1150 (2000) ("A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements . . . ."); <u>see also</u> <u>Fox Film Corp. v. Muller</u>, 296 U.S. 207, 210 (1935).  This concept has been commonly referred to as the procedural default doctrine, and is based on concerns of comity and federalism.  <u>Coleman</u>, 501 U.S. at 730-32.  If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Noltie v. Peterson</u>, 9 F.3d 802, 804-805 (9th Cir. 1993); <u>Coleman</u>, 501 U.S. at 750; <u>Park v. California</u>, 202 F.3d 1146, 1150 (9th Cir. 2000).

The mere occurrence, however, of a procedural default will not necessarily bar a federal court from reviewing claims in a petition for writ of habeas corpus.  In order for the procedural default doctrine to apply and thereby bar federal review, the state court determination of default must be grounded in state law that is both *adequate* to support the judgment and *independent* of federal law.  <u>Ylst</u>, 501 U.S. at 801; <u>Coleman</u>, 501 U.S. at 729-30; <u>see also</u> <u>Fox Film Corp.</u>, 296 U.S. at 210.  Put another way, the procedural default doctrine will apply only if the application of the state procedural rule provides "an adequate and independent state law basis" on which the state court can deny relief.  <u>Park</u>, 202 F.3d at 1151, *quoting*, <u>Coleman</u>, 501 U.S. at 729-30.

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law."  <u>LaCrosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001) (*citing* <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)); <u>Morales v. Calderon</u>, 85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'" (*quoting* <u>Coleman</u>, 501 U.S. at 735, 111 S.Ct. 2456)).  "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error

28

1    has been committed.'"  Park, 202 F.3d at 1152 (*quoting* Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct.

2    1087 (1985)).

3        To be deemed adequate, the state law ground for decision must be well-established and

4    consistently applied.  Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule

5    constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed'

6    at the time it was applied by the state court.")(*quoting* Ford v. Georgia, 498 U.S. 411, 424 (1991)).

7    Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate, the

8    discretion must entail "'the exercise of judgment according to standards that, at least over time, can

9    become known and understood within reasonable operating limits.'"  Id. at 377 (*quoting* Morales, 85

10   F.3d at 1392).

11       A state procedural bar that is both adequate and independent will be enforced by the federal

12   court on habeas review unless a petitioner shows good cause and prejudice or a fundamental

13   miscarriage of justice.  Harris v. Reed, 489 U.S. 255, 262 (1989); Coleman v. Thompson, 501 U.S. 722,

14   750 (1991).

15       A denial accompanied by a citation to In re Clark signals that the state supreme court found the

16   claims were untimely under California law.  Walker v. Martin, 562, U.S. 307, 310 (2011).  Clark

17   reaffirmed the previously established rule that untimely petitions will be summarily denied "absent

18   justification for the failure to present all known claims in a single, timely petition for writ of habeas

19   corpus."  Clark, 5 Cal.4th at 797.  In Walker, the U.S. Supreme Court that Clark's timeliness bar was

20   both independent and adequate.  Walker, 562 U.S. at 316-320.  The state rule requires that habeas

21   petitions be filed without "substantial delay," as measure from the time the petitioner knew or

22   reasonably should have known the basis for the claim.  Id. at 318.  As mentioned, a petitioner may

23   overcome a procedural bar by showing both cause for the default and prejudice resulting from it, or by

24   a showing of a fundamental miscarriage of justice.  Harris v. Reed, 489 U.S. at 262.  As Respondent

25   correctly notes, Petitioner has neither argued nor established any of these special circumstances.

26   Accordingly, in addition to being untimely, review of this claim is procedurally barred.

27       H.  Prosecutorial Misconduct

28       Petitioner next contends that his due process rights were violated when the prosecutor implied

certain facts during her cross-examination of Petitioner. For the same reasons set forth in the preceding

analysis, the claim is untimely under Mayle v. Felix and is procedurally barred because the state

supreme court denied the claim with a citation to Clark.  The same chronology that made the previous

claim of ineffective assistance untimely under the AEDPA also dooms this claim.  Additionally, the

claim does not "relate back" to the original petition; although the claim is generally premised upon

prosecutorial misconduct, as was a previous, timely claim, the two claims do not share a "common core

of operative facts," and thus this claim is untimely.  Moreover, as with the previous claim, it was denied

by the California Supreme Court with a citation to Clark, procedurally barring review in this Court.

Accordingly, review on the merits is unavailable and the claim should be rejected.

I. Cumulative Error

    Finally, Petitioner contends that his due process rights were violated due to the cumulative error

of all the above-referenced contentions.

1. The 5th DCA's Opinion

The 5th DCA denied this claim as follows:

> Zayas has asserted numerous reversible errors, and we have concluded each claimed error to be
> either unfounded or not cognizable on appeal.  Since Zayas has failed to persuade us that any
> error occurred, his cumulative error argument fails.  (People v. Heard (2003) 31 Cal.4th 946,
> 982.)

(Zayas, 2012 WL 2358046, at *8).

2. Federal Standard and Analysis

    The cumulative prejudicial effect of multiple trial errors must be considered in determining

whether habeas relief is warranted.  28 U.S.C. § 2254.  Phillips v. Woodford, 267 F.3d 966, 985 (9th

Cir. 2001).  However, as discussed above, there are no constitutional errors to accumulate.  See

Villafurerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997)(per curiam).  In analyzing prejudice in a case

in which it is questionable whether any "single trial error examined in isolation is sufficiently

prejudicial to warrant reversal," the Ninth Circuit has recognized the important of considering the

"cumulative effect of multiple errors" and not simply conducting a "balkanized, issue-by-issue

harmless error review."  United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996); see also

Whelchel v. Washington, 232 F.3d 1197, 1124 (9th Cir. 2000)(noting that cumulative error applies on

1    habeas review); <u>Matlock v. Rose</u>, 731 F.2d 1236, 1244 (6th Cir. 1984)("Errors that might not be so

2    prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively

3    produce a trial setting that is fundamentally unfair.").

4       "Multiple errors, even if harmless individually, may entitle a petitioner to habeas relief if their

5    cumulative effect prejudiced the defendant." <u>Ceja v. Stewart</u>, 97 F. 3d 1246, 1254 (9th Cir. 1996),

6    citing <u>Mak v. Blodgett</u>, 970 F.2d 614, 622 (9th Cir. 1992). "Although no single alleged error may

7    warrant habeas corpus relief, the cumulative effect of errors may deprive a petitioner of the due process

8    right to a fair trial." <u>Karis v. Calderon</u>, 283 F.3d 1117, 1132 (9th Cir. 2002). However, the Ninth

9    Circuit has also recognized that where there is no single constitutional error, nothing can accumulate to

10   the level of a constitutional violation. <u>See Rup v. Wood</u>, 93 F.3d 1434, 1445 (9th Cir. 1996). As can be

11   easily seen from the previous analyses of Petitioner's claims, no errors occurred, and therefore there

12   can be no legal or factual basis for a claim of cumulative error.

13   **RECOMMENDATION**

14      Accordingly, the Court **RECOMMENDS** that Petitioner's First Amended Petition for Writ of

15   Habeas Corpus (Doc. 26), be **DENIED** with prejudice.

16      This Findings and Recommendation is submitted to the United States District Court Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

18   Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days**

19   after being served with a copy of this Findings and Recommendation, any party may file written

20   objections with the Court and serve a copy on all parties. Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be

22   served and filed within 10 days (plus three days if served by mail) after service of the Objections. The

23   Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

24   ///

25   ///

26   ///

27   ///

28

The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   **July 27, 2016**                  **/s/ Jennifer L. Thurston**

                                              UNITED STATES MAGISTRATE JUDGE